## T. W. CHILD & CO. v. JENKINS.

A complaint, alleging that defendant rented of plaintiff a threshing engine, for which he was to pay $10 a day, and that thereafter he used the engine for 18 days, with prayer for judgment, stated a cause of action as against an objection at the trial to the introduction of any evidence thereunder.

A verdict upon conflicting evidence is conclusive.

A party who does not except to the instructions given, or make any objection to the theory of the charge, cannot thereafter contend, in the absence of any request for instructions, that the case was tried, or should have been tried, upon a different theory.

(Opinion filed, Feb. 23, 1910.)

Appeal from Circuit Court, Spink County. Hon. CHAS. S. WHITING, Judge.

Action by T. W. Child & Co. against Howard Jenkins. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

W. F. Corrigan, for appellant.  E. W. Fiske, for respondent.

SMITH, J. An action was brought in the circuit court of Spink county, where a jury trial was had, resulting in a verdict and judgment for plaintiff. A motion for a new trial was overruled, and an appeal from the judgment and order denying a new trial brings the case here for review. A brief statement of the issues and the evidence at the trial are necessary to a proper

understanding of the questions presented by the record on this appeal.

The complaint alleges, in substance, that in the fall of 1906, the defendant promised and agreed with the plaintiff to rent, and did rent, of this plaintiff one threshing engine, for the use of which he was to pay to plaintiff, according to the terms of said agreement, the sum of $10 per day; that thereafter during said year, the defendant did take, use, and operate the said threshing engine, for his own use and benefit, for the period of 18 days— with prayer for judgment. The answer is a general denial. At the trial an objection was made to any evidence under this complaint, for the reason that the same does not state a cause of action, which was overruled, and error is assigned. There was no error in this ruling. See Strait v. City of Eureka, 17 S. D. 326, 96 N. W. 695.

Upon the trial rulings were made by the court upon defendant's objections to certain questions as leading and suggestive, all of which we have carefully considered, but do not deem it necessary to discuss them, as in our judgment they clearly fall within former rulings of this court in Freeman v. City of Huron, 10 S. D. 368, 73 N. W. 260; Holdridge v. Lee, 3 S. D. 134, 52 N. W. 265; Bedtkey v. Bedtkey, 15 S. D. 315, 89 N. W. 479; State v. Bunker, 7 S. D. 639, 65 N. W. 33.

Appellant in his brief contends that there are only two possible theories upon which the plaintiff can recover in this action: First, by alleging and proving ownership of the threshing engine; or, second, by proving a binding agreement with the owner of the property, under which plaintiff was authorized to rent the threshing engine and collect the rentals. Conceding this to be true, a brief examination of the evidence and the issues submitted to the jury becomes necessary. The evidence in the record shows that some time in 1901, one Herb Harris purchased a threshing rig from the plaintiff, and gave back a mortgage on the same for a part of the purchase price, and later lost the separator, but in what manner does not appear; that at the time of the various negotiations hereinafter referred to this chattel mortgage remained due and unpaid, and the plaintiff had been pressing

Harris for payment; that about the last of July or the first of August, 1906, Harris went to the office of Child & Co., and told them he had lost his separator, and asked them to take back" the engine and other truck," and sell it, and give him credit for it, and they told him they would do so, but the engine remained in Harris' possession, and was never actually delivered to Child & Co. Not long after this conversation Harris again visited the office of Child & Co., and informed them that the defendant Jenkins wanted to rent the engine, to which Mr. Child replied: "All right, I don't know as we will sell it; we might still get something out of it." It was agreed that any money received by Child & Co. on a sale of engine or from rentals should be credited on Harris' indebtedness. Later Harris told the defendant, Jenkins, that any deal he could make with Child & Co. would be satisfactory to him, and that he had authorized Child & Co. to rent the engine and collect the rent. These facts all stand undisputed upon the record. Shortly after this the defendant, Jenkins, went to the office of Child & Co. and had a conversation with Mr. Child about renting the engine. There is a direct conflict in the evidence as to what was said between Mr. Child and Mr. Jenkins in this conversation.

Mr. Child testified that : "Mr. Jenkins said he wanted to rent the engine, and would give us $10 a day for the use of the engine. I told him all right; he could have it. He told me he would give $10 a day for the use of the engine, if we would let him have it until he got through threshing." J. B. Lundy, a witness on behalf of plaintiff, testified: "I had a conversation with Mr. Jenkins relative to renting the engine. He met me on the street and said: 'I have rented that engine of Harris' of Child, and am to give him so much a day. Now, you won't jump up and take it, will you?' Mr. Jenkins and I went to the office, and Jenkins said he would give us so much for the use of the engine, providing we would let him have it until he got through threshing, but did not want to buy a separator and have us take the engine away from him after he bought the separator. He said he would pay $10 a day for the use of the engine." On the contrary, the defendant Jenkins testified in regard to this conversation with

Child: "I asked Mr. Child about the rental of the Harris engine, and he told me he had nothing to do with it and to go to Harris, and any deal I made with Harris was satisfactory to him. I knew that Child had a mortgage on the engine, and I asked him if I bought a separator and rented the engine of Harris, if there would be any danger of foreclosing the mortgage before I got done threshing, and he said, 'No,' He did not ask me to pay the rental to him. * * * I went to Child, and he said: 'All I have to do with it is, Harris has to settle with me this fall.' * * * I made a deal with Harris to rent the engine and pay him·so much per day. I paid Harris for the use of the engine by doing his threshing for him. * * * At the time I had the conversation with Harris relative to the renting of the engine, there was no understanding that I was to thresh his crop in pay- ment. * * * I never told him or anybody else that I would pay plaintiff the rental for the engine." In regard to renting the engine to defendant Harris testified: "When I rented the engine finally to Mr. Jenkins, the conversation was had at my place. Mr. Jenkins called there to see me about it. I told him he could have the engine for $10 per day." The disputed fact as to whether the defendant, Jenkins, rented the engine from, and agreed to pay the rental to, the plaintiff was fully and fairly submitted to the jury under the instructions of the court, and their verdict is conclusive upon it.

The record also discloses the fact of the plaintiff's contention before the jury that no contract of rental was in fact ever made between Harris and Jenkins, and that such alleged renting was merely an afterthought, a pretense, through which Harris and Jenkins were seeking to appropriate the rental of the engine for their own benefit. and defeat the plaintiff's rights. Under the instructions of the court, this contention became vital to the plain- tiff's recovery in the action. The jury were told by the court: "If you should find that such lease (between Child & Co. and defendant, Jenkins) had been made, * * * but that Harris revoked the rights of Child & Co. by leasing the rig himself (to Jenkins), then you must find for the defendant." This instruc- tion was very favorable to the defendant, and under it the jury

must have found the lease as' alleged by plaintiff, and must also have found that the alleged lease between Harris and Jenkins never had any existence, but was a mere pretense, as contended by plaintiff.   That such contention before the jury was made by the plaintiff is clear from the charge of the judge, in which he says:  "But it is the contention of the plaintiff that there was no lease ever made by the owner, Harris, to Jenkins, and that this is a pretense, an afterthought, by which these parties are on the one hand trying to collect a threshing bill, and on the other hand trying to avoid the cash payment of a threshing bill, and that the only lease that ever was made was this lease by Child & Co. which they claim was made."   No exception was taken to the charge of the court, and it therefore stands as the law of the case, and the issues submitted to the jury cannot be questioned by appellant.

Appellant in his brief and argument contends that there are but two theories upon which the plaintiff can recover in this case: First, that the plaintiff was the owner of the engine, and entitled to the rentals thereof as such owner; second, that the plaintiff had a binding agreement with the owner of the engine, by which it was authorized to rent the engine and receive the rentals therefor. Appellant also contends that the entire record shows that the plaintiff claims to recover, under the former theory, namely, as owner of the engine.   But no such allegation is made in the complaint, nor do the instructions of the court in presenting the issues to the jury make any such assumption.   On the contrary, the question of the plaintiff's ownership of the engine was, by the instructions, entirely eliminated, as the case was given to the jury.   These instructions were not excepted to, nor was any objection made to the theory of the charge.   Appellant cannot now contend, in the absence of any requests for instructions, that the case was tried, or should have been tried, upon a different theory of the facts or law.

Appellant's entire argument is upon the theory that the contract of sale of the engine by Harris to the plaintiff, being executory and not in writing, was void under the statute of frauds, and that the evidence does not show a sufficient consideration to support the contract of sale.   This argument appears to be founded

upon an entire misapprehension of the theory upon which the case was in fact tried. The jury by their verdict, under the instructions of the court, have found that the defendant, Jenkins, did rent the engine from the plaintiff, and agreed to pay plaintiff for the use thereof, that such transaction was authorized by Harris, the owner, and that the alleged lease by Harris to the defendant was a mere pretense or afterthought.

No question as to the sufficiency of the evidence to sustain the findings of the jury under this theory is presented to the court upon this appeal; and, as we find no error in the record, the judgment and order of the trial court are affirmed.

WHITING, P. J., not sitting.